UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSE ALBERTO VEGA,

       Petitioner,

v.                                                   Case No. 2:15-cv-116
                                                   HON. ROBERT HOLMES BELL

JEFFREY WOODS,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Jose Alberto Vega filed this petition for writ of habeas corpus challenging his jury conviction for two counts of first degree criminal sexual conduct, MCL § 750.520b(1)(a). Petitioner was sentenced to a term of 15 to 50 years imprisonment. Petitioner was convicted of sexually assaulting the young daughter of his former girlfriend. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

       Petitioner alleges that:

       I. Petitioner was deprived of his constitutional right to a fair and impartial trial by prosecutorial misconduct when the prosecutor referenced previous testimony not in the record, stated her opinion that Petitioner was guilty, incorrectly stated the duty of the jury, and misrepresented evidence.

       II. Petitioner was deprived of a fair trial where an inadmissible statement made by Petitioner was used by the prosecutor in her closing argument in violation of *People v. Mosley*, 423 U.S. 96 (1975) and *Miranda v. Arizona*, 398 U.S. 436 (1966).

> III. Petitioner was deprived of his constitutional right to effective assistance of counsel where counsel failed to discover exculpatory material, failed to properly object or request a limiting instruction from the court during prosecutorial misconduct, stipulated to expert testimony, and used references and the result of the prior trial in his arguments.
>
> IV. Petitioner was denied his fundamental due process protection to a fair trial as guaranteed under both state and federal constitutions when the trial court omitted complete jury instructions.
>
> V. Petitioner was denied a fair trial as guaranteed under both state and federal constitutions when the trial court failed to control the Petitioner's criminal proceedings by failing to properly instruct the jury.
>
> VI. Petitioner was denied a fair trial as guaranteed under both state and federal constitutions when the prosecution failed to ensure that the jury was properly instructed, failed to ensure that Petitioner's due process rights were protected under his statutory right to submit to a polygraph examination which denied Petitioner the right to present a defense.
>
> VII. Petitioner was denied a fair trial as guaranteed under both state and federal constitutions when his trial counsel failed to object to the jury instructions, and that Petitioner's right to present a defense was denied when he was denied his statutory right to submit to a polygraph examination to prove his innocence.
>
> VIII. Petitioner was denied his fundamental and constitutional rights to due process as guaranteed under both state and federal constitutions when appellate counsel failed to master the trial record and raise these meritorious dead bang winners in his appeal of right.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.

3

*Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts numerous instances of prosecutorial misconduct occurred during his trial. Petitioner states that the prosecutor made references to testimony not in the record, stated her personal belief of Petitioner's guilt, misrepresented the duty of the jury, misrepresented evidence, commented on Petitioner's silence in violation of *Miranda*, and failed to offer Petitioner a polygraph examination which denied him a defense. Issues I, II, and VI. Respondent argues that these claims fail as procedurally defaulted[1], meritless, or that any error was harmless.

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must

---

[1] It is the opinion of the undersigned that the Court need not address Respondent's claim that Petitioner procedurally defaulted any of the issues presented in this Petition, because each of the claims asserted lack merit.

4

consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

Petitioner argues that the prosecutor improperly used statements that he made to police in violation of Petitioner's Fifth Amendment and *Miranda* rights. The Prosecutor read the transcript of Petitioner's interview with officer Lowrie during her closing arguments to the jury and interjected her own comments arguing that Petitioner's failure to deny the allegations against him was evidence of his guilt. Petitioner argues that the Prosecutor's argument was improper and violated his right to a fair trial.

The Michigan Court of Appeals explained that the improperly admitted statements were not incriminating because the statements involved Petitioner's refusal to admit or deny the allegations and were cumulative to other properly admitted evidence. The Michigan Court of Appeals concluded:

> Criminal suspects enjoy safeguards against involuntary self-incrimination during custodial interrogations. *Michigan v Mosley*, 423 US 96, 99; 96 S Ct 321; 46 L Ed 2d 313 (1975); *Miranda v Arizona*, 384 US 436, 444-445; 86 S Ct 1602; 16 L Ed 2d 694 (1966). One of these safeguards is the right to remain silent during police interrogation and to terminate further questioning. *Mosley*, 423 US at 103-104. Law enforcement officers are required to honor a suspect's invocation of his right to silence, and "the admissibility of statements obtained after the person in custody has decided to remain silent depends . . . on whether his 'right to cut off

5

questioning' was 'scrupulously honored.'" *Id.* at 104, quoting *Miranda*, 384 US at 474, 479. A criminal suspect may invoke his right to remain silent at any time during the interview, even if he waived his right at an earlier time. *Mosley*, 423 US at 102-104; *Miranda*, 384 US at 444-445; 473-474, 479. But to invoke the right, a defendant must unequivocally and unambiguously communicate his desire to remain silent. *Berghuis v Thompkins*, __ US __; 130 S Ct 2250, 2260; 176 L Ed 2d 1098 (2010); *People v Catey*, 135 Mich App 714, 722-726; 356 NW2d 241 (1984).

Here, the record indicates that despite waiving his *Miranda* rights at the beginning of an interview with the police, defendant unambiguously invoked his right to remain silent during the interview when he stated: "I don't talk no more. That's it. I gotta go to jail or I gotta go to prison, fine." We find defendant's statement to be an unambiguous invocation of his right to remain silent because defendant stated that he no longer wished to speak with police officers. See *Berghuis*, 130 S Ct at 2260 (a defendant can unambiguously assert his right to remain silent by imply stating that "he did not want to talk with the police.") Further, we find that the interviewing officers failed to "scrupulously honor" defendant's request as they continued to interview defendant without a break in questioning. See, e.g., *People v Williams*, 275 Mich App 194, 198; 737 NW2d 797 (2007) (noting a relevant factor in determining whether the police could resume interrogation after a suspect has invoked his right to remain silent is whether a significant time elapsed since the person invoked the right to remain silent). Thus, the statements defendant made after he invoked his right to remain silent were admitted in error. *Mosley*, 423 US at 104; *Miranda*, 384 US at 479.

Having determined that some of defendant's statements were admitted in error, our next inquiry is whether the error was harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994); *Chapman v California*, 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967). We conclude the error was harmless beyond a reasonable doubt because the statements that were erroneously admitted were not incriminating. See *People v Knight*, 122 Mich App 584, 594; 333 NW2d 94 (1983) (holding an erroneously admitted statement that is not incriminating was harmless beyond a reasonable doubt). Indeed, defendant's statements did not amount to an admission of guilt. Instead, they were a refusal to admit or deny the allegations made against him. Thus, we conclude that any error that occurred was harmless beyond a reasonable doubt. Our conclusion is further bolstered because the challenged statements were cumulative to properly admitted

>evidence. See *People v McRunels*, 237 Mich App 168, 184-185; 603 NW2d 95 (1999) (applying the *Chapman* standard and holding that defendant's erroneously admitted statements were harmless when the statements were cumulative to properly admitted evidence). In this case, defendant initially waived his right to remain silent and agreed to speak with officers; consequently, any statements defendant made before he invoked his rights were admissible. See *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005) (an accused's voluntary custodial statements are admissible if they are obtained after a valid waiver of *Miranda* rights). At trial, defendant's admissible statements were presented to the jury before his inadmissible statements were. The inadmissible statements were cumulative to the admissible statements because in each defendant neither admitted nor denied the allegations against him. Indeed, defendant consistently refused to either admit or deny the allegations against him, both before and after he invoked his right to remain silent. Therefore, because of the similarities between the statements, we find that the inadmissible statements were cumulative to the admissible statements, and the error in admitting the statements defendant made after he invoked his right to remain silent was harmless. *McRunels*, 237 Mich App at 184-185; see also *People v Matuszak*, 263 Mich App 42, 52; 687 NW2d 342 (2004) (because the challenged evidence was cumulative to admissible evidence, any error in admitting the evidence was harmless beyond a reasonable doubt).

ECF No. 9-27, PageID.667.

In *Doyle v. Ohio*, 426 U.S. 610 (1975), the Supreme Court held that a prosecutor may not use a petitioner's silence at the time of arrest or after *Miranda* warnings have been given for impeachment during trial. *See also Greer v. Miller*, 483 U.S. 756 (1987). In my opinion, there was no violation of Petitioner's right to remain silent. Even if an error occurred, the statements made could not have had a substantial and injurious effect on the jury verdict. In order to justify habeas relief based on the state trial court's error, petitioner must show that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 1722 (1993); *O'Neal v. McAninch*, 513 U.S. 432 (1995); *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239 (1946). The Supreme Court

stated "if one cannot say with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected," *Kotteakos*, 328 U.S. at 750, 66 S. Ct. at 1248, and if a judge is in "grave doubt" as to whether a constitutional error had a substantial effect on a jury, that error is not harmless and the petitioner must win. *O'Neal*, 115 S. Ct. at 995. Under *Brecht*, petitioner must show that the trial error resulted in actual prejudice. The use of the transcript by the Prosecutor was not prejudicial to Petitioner because it merely repeated the evidence presented that Petitioner neither admitted nor denied the allegations during the police investigation. In the opinion of the undersigned, the Michigan Court of Appeals correctly concluded that the evidence was cumulative to properly admitted evidence and that Petitioner failed to show actual prejudice. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserted other prosecutorial misconduct claims in a supplemental brief written by one of Petitioner's appellate counsels. The Michigan Court of Appeals rejected those claims for the reason that the arguments were "abandoned" by his failure to cite authority in support of his position explaining that Petitioner must do more than "merely announce his position and leave it this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." Opinion, ECF No. 9-27, PageID.669. In addition, the Court of Appeals concluded that each of the claims lacked merit. Respondent asserts that these claims are procedurally defaulted or alternatively, lack merit.

8

In the opinion of the undersigned, the Michigan Court of Appeals rejection of the merits of Petitioner's asserted prosecutorial misconduct claims in his appeal of right was reasonable. Petitioner cannot establish that the Michigan Court of Appeals decision was an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States or based upon an unreasonable determination of the facts in light of the evidence presented at trial.

Petitioner argues that the prosecutor's references to the fact that his prior trial resulted in a hung jury was improper. Specifically, Petitioner raises concerns about a statement made during opening argument by the Prosecutor that a jury previously found Petitioner not guilty of sexual assault of Desiree, but could not decide the issues regarding Naomi and Aaleah, resulting in a hung jury. ECF No. 9-17, PageID.490. Similarly, Detective Amy Lowrie stated the results of the prior trial in her testimony in response to the Prosecutor's question. ECF No. 9-18, PageID.543. During her closing argument, the Prosecutor argued that Naomi's testimony was consistent with what she stated in the prior trial. ECF No. 9-19, PageID.570. Again, during closing argument, the Prosecutor mentioned the results of the prior trial to explain why this case was only about the sexual assault of Naomi. ECF No. 9-19, PageID.571. Petitioner does not argue that the Prosecutor made inaccurate statements. Similarly, Petitioner has not asserted any prejudice from the Prosecutor's comments. "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v.*

*Young*, 470 U.S. 1, 11-12 (1985).  In the opinion of the undersigned, Petitioner has not shown that the Prosecutor made inaccurate statements or that he was prejudiced by the Prosecutor's statements.

Petitioner claims that the Prosecutor improperly vouched for Petitioner's guilt during closing argument when she asserted that Petitioner's response to the Detective during interrogation was not consistent with what an innocent person would say.  The Prosecutor when referring to Petitioner's comment to Officer Lowrie that his conscience was okay, and that he could live with himself stated: "You don't' say that if you're not guilty and you're going to be arrested as a child molester, you don't.  That's not what you say.  Your conscience is not going to okay with that.  You - - nobody in the world I can think of is going to live with themselves like that."  ECF No. 9-19, PageID.567.  This was simply proper argument and not improper vouching by the Prosecutor.  The federal courts have generally recognized two types of objectionable vouching.  *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, No. 07-4285, slip op. at 22-23 (6th Cir. Feb. 2, 2012) (treating the two aspects of vouching as part of a single standard).  The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility.  *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).  Neither type of vouching is involved in this case.

Moreover, instructing a jury that the arguments are not evidence has sometimes been deemed to cure any improprieties in a closing argument. *Byrd*, 209 F.3d 486, 538 (6th Cir. 2000). The Court instructed the jury that "lawyers' statements and arguments are not evidence." ECF No. 9-19, PageID.577. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). In the opinion of the undersigned, Petitioner cannot show that the Prosecutor improperly vouched for his guilt during her closing argument or that her closing argument violated Petitioner's right to a fair trial.

Similarly, the Prosecutor did not improperly comment on the duty of the jury during her closing argument when she stated that consideration of the evidence is like putting together a puzzle, in that you may not have all the pieces but you can still see the big picture. ECF No. 9-19, PageID.560. Petitioner has not shown that this was an improper argument or that he was prejudiced by this statement. The jury was instructed that the Prosecutor's argument was not evidence. In the opinion of the undersigned, Petitioner cannot show that the Prosecutor committed any misconduct during her closing argument to the jury.

Petitioner argues that the Prosecutor committed misconduct by not offering him a polygraph examination to prove his innocence. Petitioner asserted this claim in his motion for relief from judgment. The trial court denied this claim stating:

> Defendant also asserts that he was denied a fair trial because no one offered him the opportunity to take a polygraph examination. Defendant states that MCL 776.21 provides "an absolute statutory right" to submit to a polygraph examination in his defense. MCL 776.21(5) does provide,
>
>> A defendant who allegedly has committed a crime under sections 520b to 520e and 520g of Act No. 328 of the Public Acts of 1931, shall be given a polygraph examination or lie detector test *if the defendant requests it.*

11

>     (emphasis added). Defendant goes on about how the Prosecution "sat idly by and allowed [Defendant] to be deprived of his liberty and sent to prison, knowing that [Defendant] was denied his right to vindicate himself by and through the polygraph examination process ... " Defendant's Brief at 10. However, at no point does Defendant claim that he requested the polygraph examination. The statue is clear that the exam "shall be given" upon a *defendant's request.* As no request was made, there can be no violation of Defendant's rights. This can no provide a basis for relief from Defendant's conviction.

ECF No. 9-29, PageID.888.

In the opinion of the undersigned, Petitioner has not shown that misconduct occurred due to the prosecutor's failure to offer a polygraph examination. The Michigan statute that Petitioner bases this claim upon does not require that the Prosecutor offer criminal defendants a polygraph examination. Accordingly, the trial judge's determination that the Michigan statute did not require the Prosecutor to offer a polygraph examination was the correct interpretation of Michigan law, and the finding that the Prosecutor did not commit misconduct was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

Petitioner argues that structural error occurred when the jury was not properly instructed, the Court omitted complete instructions, and the Court failed to control the proceedings. Issues IV and V. Petitioner asserts that the Court failed to read the information and the statutes to the jury and to fully explain the charges prior to the introduction of evidence at trial. Petitioner argues the Court failed to follow long standing state law. As a result, Petitioner asserts that the Court's failure to properly instruct the jury establishes that the judge failed to control the proceedings. The trial court denied these claims in rejecting Petitioner's motion for relief from judgment.

> Defendant raises several issues related to his jury instructions. First, he argues that the Court failed to properly instruct the jury prior to presenting evidence. More specifically, Defendant asserts that the trial court did not read the information and the statutes related to the charges. Defendant asserts that this did not adequately prepare the jury to understand the proceedings and the evidence.
>
> First, it should be noted that no objections were made to the jury instructions at the time of trial. Second, at the time of Defendant's trial, the Court was not required to include the elements of the offense in the preliminary jury instructions. That change was made effective September 1, 2011, well after Defendant's trial. Third, as the prosecutor discussed the elements of the offense in her opening statement, if there had been an error, such error would have been harmless.
>
> Defendant also argues that because the Court failed to properly instruct the jury as discussed above, the Court failed "to control of [sic] the criminal proceedings at all times." *See* Defendant's Brief at 7. However, as the Court did properly instruct the jury, there is no need to address this point further.

ECF No. 9-29, PageID.887.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must demonstrate that the instruction violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," . . . not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" . . . .

431 U.S. at 154. *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, No. 09-2371, slip op. at 7 (6th Cir. Apr. 5, 2012)

(same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). The Supreme Court has held that "Before a federal court may overturn a conviction resulting from a state trial, it must be established not merely that the instruction is undesirable, erroneous,. . .or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). That Court went on to say that the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147. If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.

The instructions given by the Court were approved by defense counsel. Moreover, the instructions provided by the Court were proper. The court instructed the jury as to the elements of criminal sexual conduct. ECF No.9-19, 578-579. The jury was properly instructed that it was the Prosecutor's duty to prove the elements of the crime beyond a reasonable doubt, and the Court gave a proper reasonable doubt instruction. ECF No. 9-19, 577. After the Court instructed the jury, the judge asked counsel if there were any objections to the instructions. Defense counsel and the Prosecutor agreed that the Court omitted two supplemental follow-up instructions to the criminal sexual conduct charges. ECF No. 9-19, PageID.580. The Court called the jury back and read the supplemental instructions to the jury. ECF No. 9-19, PageID.581. Under these circumstances, Petitioner cannot establish that the instructions provided by the Court "so infected the trial that [his] conviction violated due process." *Cupp*, 414 U.S. at 147. Nor can Petitioner successfully assert the failure of the Court to read the information, statutes, and elements of the crime before the evidence was presented violated his Constitutional rights. In the opinion of the undersigned, when considering the totality of the instructions provided by the Court, Petitioner cannot establish the trial court's decision rejecting this claim was an unreasonable decision.

Petitioner argues that he was denied the effective assistance of trial counsel. Petitioner complains that counsel failed to discover exculpatory evidence, failed to make objections or request limiting instructions to prosecutorial misconduct, erred by stipulation to a portion of expert testimony, erred by referring to the previous trial in his argument, erred by not objecting to the lack of proper jury instruction, and erred by not giving Petitioner a polygraph examination. Issues III and VII. Both the Michigan Court of Appeals on direct review, and the trial court in denying Petitioner's motion for relief from judgment, considered and rejected Petitioner's ineffective assistance of counsel claims.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner argues that he informed counsel of the numerous reports from local and state agencies dating back to 1999 that contained exculpatory evidence of physical and sexual abuse. Petitioner claims that his counsel never investigated this issue and did not use this evidence during trial. Petitioner has presented no evidence to support his claim that the reports could provide exculpatory evidence. It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Petitioner has not shown that counsel failed to find exculpatory evidence. Petitioner has not developed his claim that any agency reports determined that there was no sexual assault of the victims. Further, Petitioner has not shown how the alleged reports were relevant to his defense, other than stating in conclusory fashion that the reports contained exculpatory information and that

16

his counsel should have discovered them. Most importantly, Petitioner has not shown that the reports, if discovered by counsel, were relevant and admissible at trial. Petitioner has completely failed to show that his counsel was ineffective for failing to find the alleged exculpatory evidence.

Similarly, Petitioner asserts that his counsel erred by stipulating that Dr. Sarah Brown's preliminary examination testimony could be read into evidence instead of requiring her to attend trial while she was unavailable to testify. ECF No. 9-19, PageID.550-552. Dr. Brown testified that she found no evidence of anal penetration of the victim, but stated that she would not expect to find such evidence because the tissues heal very rapidly. PageID.551. Petitioner speculates that Dr. Brown's testimony would have been different if the testimony was limited to only Naomi and not also her sisters. Petitioner provides no basis for the Court to conclude that counsel was ineffective on this issue. The Court may not rely on Petitioner's speculation to support a claim of prejudice or that his counsel was ineffective. Most importantly, it is unlikely that Dr. Brown's testimony would have been more helpful to Petitioner if she was required to testify in person at trial. In the opinion of the undersigned, counsel was not ineffective on this issue.

Petitioner asserts that his trial counsel should not have made any references to the jury regarding his previous trial. However, the Prosecutor had mentioned the outcome of the first trial in her opening remarks. It was the Prosecutor's argument that the fact that a jury acquitted Petitioner of criminal sexual assault of one of Naomi's sisters should not sway the jury to find that Petitioner was innocent of criminal sexual assault against Naomi. Further, the jury was aware that the first jury was unable to decide the issue of criminal sexual assault against Naomi. In the opinion of the undersigned, it was a sound trial tactic to let the jury know that the former jury had acquitted Petitioner of similar charges of criminal sexual conduct and was at least skeptical of the

17

other charges brought against Petitioner. Petitioner may not now assert that his counsel was ineffective for choosing this strategy.

Petitioner asserts that his counsel denied Petitioner a defense by failing to ensure that law enforcement offered a polygraph examination, by failing to object to the jury instructions, and by failing to object to the instances of prosecutorial misconduct. For the reasons stated, Petitioner has not shown that he was denied any Constitutional rights by the prosecutor or the trial court. Therefore, Petitioner cannot establish that his trial counsel was ineffective on these issues.

Petitioner asserts that his appellate counsel was ineffective for failing to assert each of these "dead bang winner" issues in Petitioner's appeal of right. Issue VIII. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.");*Burton v. Renico*,

18

391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).  In the opinion of the undersigned, Petitioner has not shown that his appellate counsel erred by failing to raise any meritorious issue, because each of the issues asserted in this petition fail to support Petitioner's claims that his rights were violated.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     October 24, 2016                          */s/ Timothy P. Greeley*
                                                     TIMOTHY P. GREELEY
                                                     UNITED STATES MAGISTRATE JUDGE